**SHUB LAW FIRM LLC**
Jonathan Shub (CA Bar No. 237708)
Kevin Laukaitis
134 Kings Hwy E Fl 2
Haddonfield, NJ 08033
T: (856) 772-7200
jshub@shublawyers.com
klaukaitis@shublawyers.com

*Attorneys for Plaintiff and the Proposed Class*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Kyla Tapia, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiff, | |
| - against - | Class Action Complaint |
| The Coca-Cola Company, | |
| Defendant | Jury Trial Demanded |

Plaintiff Kyla Tapia ("Plaintiff"), by attorneys, alleges upon information and belief, except for allegations pertaining to Plaintiff, which are based on personal knowledge:

1.    The Coca-Cola Company ("Defendant") manufactures, distributes, markets, labels, and sells berry flavored carbonated beverages under the Fanta brand (the "Product").



1

**CLASS ACTION COMPLAINT**

## FACTUAL ALLEGATIONS

## I.      CONSUMER DEMAND FOR NATURAL FLAVORS

2.      Consumers have been increasingly concerned about the ingredients added to what they eat and drink.

3.      According to the Wall Street Journal, "As consumer concern rises over artificial ingredients, more food companies are reconstructing recipes" to remove artificial flavors.[1]

4.      According to Paul Manning, chairman, chief executive officer and president of Sensient Technologies, "Consumer desire for naturally flavored products is an emerging trend."[2]

5.      According to Consumers Union, over 80% of consumers expect that the word "natural" on a food label means that a processed food does not contain any artificial ingredients.

6.      Explanations for why consumers prefer foods containing natural, instead of artificial ingredients, are varied.

7.      Many Americans believe that products are healthier when artificial ingredients are removed, even in "unhealthy" categories such as snacks, cake mix, and frozen pizza.

8.      A recent survey reported that over 82% of US respondents believe that foods with artificial flavors are less healthy than those promoted as containing natural flavors and/or not containing artificial flavors.

9.      According to Nielsen, the absence of artificial flavors is very important for over 40% of respondents to their Global Health & Wellness Survey.

10.     One scholar theorized "the preference for natural products appeals to a moral ideology and offers a moral satisfaction."[3]

11.     Consumers seek to avoid artificial flavors for health and nutrition purposes, because they are highly processed with chemical additives in laboratories.

12.     The trade journal, Perfumer & Flavorist, described "The Future of Artificial Flavors

---

[1] Lauren Manning, How Big Food Is Using Natural Flavors to Win Consumer Favor, Wall Street Journal.
[2] Keith Nunes, Using natural ingredients to create authentic, fresh flavors, Food Business News, Sept. 20, 2018.
[3] Rozin, P., Spranca, M., Krieger, Z., Neuhaus, R., Surillo, D., Swerdlin, A., & Wood, K. (2004). Preference for natural: Instrumental and ideational/moral motivations, and the contrast between foods and medicines. Appetite, 43(2), 147–154. doi:10.1016/j.appet.2004.03.005.

& Ingredients" as bleak, given consumer opposition to these synthetic ingredients.[4]

13.     Mintel announced that consumer avoidance of artificial flavors is just as strong as their desire for natural flavors, in its Report, "Artificial: Public Enemy No. 1."

14.     About half of Americans say they seek out natural flavors at least some of the time.

15.     In contrast, artificial flavors were sought out by only about one in 10 consumers, with approximately half saying they avoid each of them at least some of the time.

16.     Nielsen reported that 62% of consumers say they try to avoid artificial flavors.

17.     New Hope Network concluded that 71% of consumers today are avoiding artificial flavors.

18.     Label Insight determined that 76% of consumers avoid artificial flavors.

19.     A recent survey shows more than three in four people worldwide are convinced that artificial flavors have no place on their ingredient lists.[5]

20.     According to Forbes, 88% of consumers consider foods without artificial flavors to be more natural and/or healthy than foods with artificial flavors, and they would pay more for such foods.

## II.     PRODUCT REPRESENTED AS ONLY CONTAINING NATURAL FLAVORS

21.     Defendant markets the Product with the prominent statement, "100% NATURAL FLAVORS," above the word, "BERRY," and picture of five blueberries and a raspberry containing its stem and leaves, and two red drops purporting to be from the raspberry.

---

[4] Jim Kavanaugh, The Future of Artificial Flavors & Ingredients, Perfumer & Flavorist, June 12, 2017.
[5] What 'Natural' Really Means to Consumers GNT Group's Guide to Global Consumer Demands attests importance of natural colors for future-proof products, July 13, 2017.

**CLASS ACTION COMPLAINT**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28




22.     The representation that the Product has "100% Natural Flavors" appeals to the more than seven out of ten consumers who avoid artificial flavors, as these synthetic ingredients are believed to be associated with detrimental health and environmental effects. [6]

23.     By identifying the Product as having "100% Natural Flavors," with pictures of blueberries and a raspberry, consumers expect only natural flavors, because that is what the label says.

24.     Though the ingredients listed include "Natural Flavor," they also include "Malic Acid," which renders the statement of "100% Natural Flavors" false and misleading because the malic acid used is a synthetic ingredient which contributes to the Product's flavor.

[6] Alex Smolokoff, Natural color and flavor trends in food and beverage, Natural Products Insider, Oct. 11, 2019; Thea Bourianne, Exploring today's top ingredient trends and how they fit into our health-conscious world, March 26-28, 2018; Nancy Gagliardi, Consumers Want Healthy Foods – And Will Pay More For Them, Forbes, Feb 18, 2015.

**CLASS ACTION COMPLAINT**

CARBONATED WATER, HIGH FRUCTOSE CORN SYRUP, NATURAL FLAVORS, CITRIC ACID, SODIUM CITRATE, MALIC ACID, POTASSIUM SORBATE AND SODIUM BENZOATE (TO PROTECT TASTE), BLUE 1.

## III.    MALIC ACID

25.    A flavor is a substance the function of which is to impart taste. See 21 C.F.R. § 101.22(a)(1) and (3).

26.    Taste is the combination of sensations arising from specialized receptor cells located in the mouth.[7]

27.    Taste can be defined as sensations of sweet, sour, salty, bitter, and umami.

28.    However, limiting taste to five categories suggests that taste is simple, which is not true. *Id.*

29.    For example, the taste of sour includes the sourness of vinegar (Acetic Acid), sour milk (Lactic Acid), lemons (Citric Acid), apples (Malic Acid), and wines (Tartaric Acid). *Id.*

30.    Each of those acids is responsible for unique sensory characteristics of sourness. *Id.*

### A.    FLAVOR PROPERTIES OF BLUEBERRY AND RASPBERRY

31.    Fruit flavors are the sum of the interaction between sugars, acids, lipids, and a blend of volatile compounds.[8]

32.    The content of sugars, mainly glucose and fructose, and its ratio to the content of acids, such as citric and malic acid, determine the sweetness of fruits. *Id.*

---

[7] Gary Reineccius, Flavor Chemistry and Technology § 1.2 (2d ed. 2005).
[8] Y.H. Hui, et al., Handbook of Fruit and Vegetable Flavors, p. 693 (2010).

**CLASS ACTION COMPLAINT**

33.     Sweetness and tartness are important contributors to the states and flavor perception of blueberries and raspberries.[9]

34.     Organic acids such as Malic Acid in blueberries and raspberries, contribute to the tartness of those fruits' juices. *Id*.

35.     The quality and overall consumer acceptability of blueberries and raspberries is based on their perceived sweetness and tartness, as well as their flavor perception, balance, and overall consumer acceptability, which is determined by their sugar to acid ratio.

36.     The most important organic acid in blueberries is malic acid, which is estimated to contribute to one-third of the total acid concentration.

37.     In raspberries, the relative amount of malic acid compared to citric acid is less, but malic acid is significant in providing the "tart" raspberry taste.

**B.      CHEMICAL STRUCTURE OF MALIC ACID**

38.     Malic acid (molecular formula $C_4H_6O_5$) is the common name for 1-hydroxy-1, 2-ethanedicarboxylic acid.

39.     Malic acid has two isomers, or different arrangements of atoms in the molecule, L-malic acid, and D-malic acid. 21 C.F.R. § 184.1069.

40.     An isomer is a molecule sharing the same atomic make-up as another but differing in structural arrangements.[10]

41.     Stereoisomers contain different types of isomers, each with distinct characteristics that separate each other as different chemical entities with different chemical properties. Id.

42.     Stereoisomers differ from each other by spatial arrangement, meaning different atomic particles and molecules are situated differently in any three-dimensional direction by even one degree. *Id*.

43.     An enantiomers is a type of stereoisomer that is a mirror-image and cannot be superimposed. *Id*.

44.     It can be helpful to think of enantiomers as right-hand and left-hand versions of the

[9] Y.H. Hui, et al., Handbook of Fruit and Vegetable Flavors, p. 693 (2010).
[10] Dan Chong and Jonathan Mooney, Chirality and Stereoisomers (2019).

**CLASS ACTION COMPLAINT**

same molecular formula. D-Malic Acid and L-Malic Acid are enantiomers.

45.     The following are skeletal formulas of the enantiomers D-Malic Acid and L-Malic Acid:



46.     L-malic acid occurs naturally in various fruits and is known for providing sweetness and tartness, among other flavors.

47.     D-Malic Acid does not occur naturally.

48.     D-Malic Acid is most commonly found as a Racemic Mixture of the D isomer and L isomer, DL-Malic Acid, which is commercially made from petroleum products.

**C.     ADDITION OF DL-MALIC ACID**

49.     When chemical components of a solution are added to that solution, the previous combination of chemicals found in that solution changes.

50.     Likewise, adding DL-Malic Acid to a solution of natural flavorings containing L-Malic Acid would change the concentration of Malic Acid in the solution and the ratio of total Malic Acid to sugars in that solution.

51.     Natural sugars – like glucose, fructose, and sucrose – combined with artificial DL-Malic Acid in a ratio engineered to resemble the natural chemical combination of sugar and L- Malic Acid found in the characterizing berry flavor of the Product is not equivalent to the natural flavor of those characterizing fruits.

52.     A natural chemical combination of sugar and L-Malic Acid, altered by adding

artificial DL-Malic Acid, is no longer equivalent to the original chemical combination of sugar and L-Malic Acid, and therefore no longer the natural flavor.

53.     Defendant includes DL-Malic Acid to help make the Product taste tart and fruity, like berries, such as blueberries and raspberries.

54.     Defendant adds artificial DL-malic acid to the Product to create, enhance, simulate, and/or reinforce the sweet and tart taste that consumers associate with berries such as blueberries and raspberries.

55.     Defendant had the option to add naturally extracted L-Malic Acid, naturally manufactured acid such as Citric Acid, or natural blueberry or raspberry flavor to the Product, but intentionally used artificial DL-Malic Acid because it was likely cheaper or more accurately resembled natural flavors than Citric Acid or other acids.

56.     DL-malic acid is synthetically produced from petroleum in a high-pressure, high-temperature, catalytic process.

57.     Since there are natural and artificial types of malic acid, laboratory analysis is required to identify which type was used in the Product.

58.     Laboratory analysis concluded the Product contains the artificial, DL-malic acid, instead of natural, L-malic acid.

59.     The Product's front label is misleading because it states, "100% Natural Flavors" when this statement is false and misleading.

60.     The ingredients are declared in a way that is misleading and contrary to law, because Defendant designates the ingredient by its generic name, "Malic Acid," instead of by its specific name, "DL-Malic Acid."

IV.     REQUIREMENTS FOR LABELING

61.     The California Sherman Food, Drug, and Cosmetic Law, Cal. Health & Saf. Code section 109875, *et seq*. ("Sherman Law"), incorporates all food flavoring and additive regulations of the Federal Food, Drug, and Cosmetic Act ("FFDCA").

62.     Federal and identical state regulations prohibit false and deceptive identification of

**CLASS ACTION COMPLAINT**

the source of a food or beverage's characterizing flavors.

63.     Artificial flavor is defined as "any substance, the function of which is to impart flavor, which is not derived from a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, fish, poultry, eggs, dairy products, or fermentation products thereof." 21 C.F.R § 101.22(a)(1).

64.     Natural flavor is defined as "essential oil, oleoresin, essence or extractive, protein hydrolysate, distillate, or any product of roasting, heating or enzymolysis, which contains the flavoring constituents" from fruits or vegetables, "whose significant function in food is flavoring rather than nutritional." 21 C.F.R § 101.22(a)(3).

65.     DL-Malic Acid is not a "natural flavor" as this term is defined by federal and state regulations and is not derived from a fruit or vegetable or any other natural source.

66.     A combination of sugar and DL-Malic Acid in a ratio resembling a fruit flavor cannot be derived from a fruit or vegetable.

67.     A combination of sugar, natural L-Malic Acid, and artificial DL-Malic Acid combined in a way to resemble the natural ratio of sugar and L-Malic Acid found in the characterizing natural flavors of the Product cannot be derived from a fruit or vegetable.

68.     A combination of sugars and artificial DL-Malic Acid engineered to resemble the natural ratio of sugars and natural L-Malic Acid that make up the natural flavor of the characterizing fruits of the Product is not a natural flavor.

69.     The natural flavor of the fruits in controversy is heavily dependent on a specific ratio of sugar and L-Malic Acid, while the Product's flavors depend upon a ratio of sugar and DL-Malic Acid.

70.     DL-Malic Acid could function as a flavor enhancer or PH balancer.

71.     A flavor enhancer is "added to supplement, enhance, or modify the original taste and or aroma of a food without imparting a characteristic taste or aroma of its own." 21 C.F.R. § 170.3(o)(11).

72.     For example, Malic Acid added to vinegar (Ascetic Acid) dishes like barbecue pork, coleslaw, or pickled eggs would most likely not fundamentally alter the underlying vinegar flavors.

73.    However, because the flavor imparted by malic acid is a core component of blueberries and raspberries, DL-Malic Acid does not function as a flavor enhancer.

74.    Under these circumstances, artificial DL-Malic Acid fundamentally alters the original combination of sugar and natural L-Malic Acid core to blueberry and raspberry flavors, so that the flavor of the Product is no longer a natural ratio of sugar and L-Malic Acid but instead is an artificial ratio of sugar and DL-Malic Acid.

75.    PH balancers are "substances added to change or maintain active acidity or basicity, including buffers, acids, alkalis, and neutralizing agents." 21 C.F.R. § 170.3(o)(23).

76.    The malic acid used is not a PH balancer because it is not necessary to change or maintain active acidity or basicity in the Product.

77.    The Product's primary flavor is "Berry," and referred to as its "characterizing flavor." 21 C.F.R. § 101.22.

78.    The Product's label makes "direct or indirect representations" through words, "Berry," a vignette of five blueberries and one raspberry, and its blue color. 21 C.F.R. § 101.22(i).

79.    Federal and state regulations require the Product to disclose whether its characterizing berry flavor is from berries, including blueberries and raspberries, natural sources other than blueberries and raspberries, and/or from artificial, chemical sources, such as DL-Malic Acid, from petroleum. 21 C.F.R. § 101.22.

80.    Since the Product contains artificial flavor, DL-Malic Acid, that simulates, resembles or reinforces the characterizing berry flavor, the name of the characterizing flavor "shall be accompanied by the word(s) 'artificial' or 'artificially flavored,'" such as "Artificial Berry Flavored." 21 C.F.R. § 101.22(i)(2).

81.    The statement, "100% Natural Flavors," the omission of any reference to artificial flavors on the front label and ingredient list, the statement, "Berry Flavored With Other Natural Flavors," the pictures of blueberries and a strawberry, and the blue color, caused consumers like Plaintiff to expect only natural flavors.

82.    Irrespective of the purpose Defendant claims DL-Malic Acid was added to the Product, it has the same effect on its characterizing flavor.

83.     Defendant does not have the ability to command DL-Malic Acid to only perform certain functions and is not allowed to decide which Malic Acid constitutes flavor and which Malic Acid constitutes only a flavor enhancer or PH balancer.

84.     Consumers are unable to learn the malic acid listed in the ingredients is the artificial version without a chemistry kit.

85.     Defendant is required to tell consumers if it used the artificial version, instead of only using the generic name.

86.     The Product's berry flavor containing DL-Malic Acid resembles the natural characterizing flavors represented to be used.

87.     Plaintiff purchased the Product because the packaging claimed it contains "100% Natural Flavors."

88.     Plaintiff would not have been able to understand that the Product did not contain "100% Natural Flavors" without an advanced understanding of organic chemistry and without performing chemical analysis on the Product.

89.     Due to the intentional practice of falsely labeling the Product as containing "100% Natural Flavors," Plaintiff could not have known the representation was not true.

90.     Plaintiff was unaware that the Product contained artificial DL-Malic Acid when she purchased them.

91.     Plaintiff was deceived into paying money for a product she did not want or would want less, because the Product was labeled with "100% Natural Flavors," which she understood to mean its taste was provided only by natural, and not artificial, flavoring ingredients.

92.     Worse than the lost money, Plaintiff and the Class were deprived of their protected interest to choose the foods and ingredients they ingest.

93.     Plaintiff and the class members are not, and should not be, required to chemically test the food products they purchase to know the true contents of those products.

94.     Defendant, and not Plaintiff or the Class, knew or should have known that the Product's express labeling stating "100% Natural Flavors," was false, deceptive, and misleading, and that Plaintiff and the Class members would not be able to tell the Product contained artificial

DL- Malic Acid unless Defendant expressly told them, as required by law.

95.    Defendant employs professional chemists to create the chemical flavor formula of the Product.

96.    Therefore, Defendant through its employees, knew or should have known that DL-Malic Acid is not naturally occurring, and that by adding DL-Malic Acid to the Product, the natural flavoring, if any were ever actually added, would be fundamentally changed.

97.    Defendant knew that DL-Malic Acid would contribute to the tart and fruity berry taste, and that it was used to enhance the taste of blueberries and raspberries.

98.     On information and belief, Defendant through their employees did know that DL-Malic Acid was not naturally occurring and would fundamentally alter any natural combination of sugar and L-Malic Acid in the Product but chose to include DL-Malic Acid because it was cheaper for Defendant than using natural L-Malic Acid and because it did not believe its customers were educated enough to know the difference.

## V.    PRODUCT LACKS APPRECIABLE AMOUNT OF BERRY INGREDIENTS

99.    Despite the representation as "Berry," pictures of blueberries and a raspberry, and blue color, the Product contains a negligible amount of blueberry and raspberry ingredients.

100.    The ingredient list does not identify any blueberry or raspberry ingredients, only "NATURAL FLAVORS."



CARBONATED WATER, HIGH FRUCTOSE CORN SYRUP, ==NATURAL FLAVORS==, CITRIC ACID, SODIUM CITRATE, MALIC ACID, POTASSIUM SORBATE AND SODIUM BENZOATE (TO PROTECT TASTE), BLUE 1.

101. According to flavor expert Bob Holmes, if the Product provided "all the flavor depth" of a natural blueberry and natural raspberry flavor, the ingredients listed would include raspberry or blueberry extract instead of "Natural Flavors."

102. "Natural Flavors" fails to tell consumers that the Product's taste is not mostly from blueberries and raspberries, but a mix of compounds from various fruits and vegetables that are combined in a laboratory, with additives and solvents, into highly concentrated formulas.

103. The front label attempts a "disclaimer" in the lower left corner, through its statement of identity, "Berry Flavored Soda With Other Natural Flavors." 21 C.F.R. § 101.3.

104. This is language required by federal and state regulations where a beverage contains some flavor from the characterizing ingredients, and other flavor from natural ingredients other than the characterizing ingredients, which enhances, simulates, and reinforces the characterizing flavors. 21 C.F.R. § 101.22(i)(1)(iii).

105. The label is placed in a way which renders it unlikely to be seen by consumers, because it is not "in bold type" nor "in a size reasonably related to the most prominent printed matter," such as the brand name, Fanta, "100% Natural Flavors," the pictures of blueberries and a raspberry, and the word, "BERRY." 21 C.F.R. § 101.3(d).



106.    Even if consumers noticed this small print disclosure after seeing the other representations, they would not know this meant the Product did not contain an appreciable amount of blueberry and raspberry flavorings and contained artificial flavor.

107.    That the Product contains no blueberry and raspberry ingredients is confirmed by the back label statement above the Nutrition Facts of "Contains No Juice."



**CLASS ACTION COMPLAINT**

108.     To give consumers the false impression that the Product contains a greater absolute and relative amount of natural blueberry and raspberry flavors and ingredients than it does, it contains the coal tar dye, "BLUE 1," a synthetic food coloring made from petroleum.

109.     According to the head of a prominent flavor and color manufacturer, "Color is the first thing a consumer may consider when purchasing a food or beverage item."

110.     According to one website, artificial dyes are used to help hide the fact that foods do not contain the types of ingredients they explicitly and implicitly promise elsewhere on their labels.

111.     That the Product promotes blueberries, raspberries, and "100% Natural Flavors," consumers will expect the blue color is from blueberries.

112.     That the front label contains five blueberries to one raspberry reinforces this expectation of a blue color, as opposed to a red color.

113.     Without the added coloring, consumers would be suspect of a product labeled as "Berry," with pictures of berries, and promising "100% Natural Flavors," because the color would not be deep blue.

114.     This could cause consumers to inspect the ingredient list to determine the truth.

115.     Even though the Product discloses artificial coloring in the ingredient list, its usage causes consumers to expect the Product is of greater quality than it is.

116.     Though Blue 1 is approved for use in food, is has been banned in Australia and Europe due to health concerns and is linked to learning disorders and hyperactivity in children.

117.     Given that the Product is sold under the Fanta brand, Plaintiff had no reason to expect the Product lacked the relative amount and type of berry ingredients.

## VI.     RELIANCE AND ECONOMIC INJURY

118.     Plaintiff saw and relied on the representations, which misleadingly state, "100% Natural Flavors," "BERRY," and "Berry Flavored Soda With Other Natural Flavors," and contains pictures of blueberries and a raspberry, in a clear bottle of blue-colored liquid.

119.     Plaintiff sought to purchase a product which got its taste only from natural flavoring ingredients, and without artificial flavoring.

15

120.    Plaintiff would not have purchased the Product if he knew the representations were false and misleading.

121.    The Product costs more than similar products without misleading representations and but for the misleading representations, would have cost less.

122.    Plaintiff paid more for the Product than she otherwise would have, and would only have been willing to pay less, or unwilling to purchase it at all, absent the misleading representations.

123.    As a result of the false and misleading labeling, the Product is sold at a premium price, approximately no less than $2.29 per 16 OZ, excluding tax or sales, compared to other similar products represented in a non-misleading way, and higher than the price of the Product if it were represented in a non-misleading way.

## INTRADISTRICT ASSIGNMENT

124.    Pursuant to Civil Local Rule 3-2(c-d), a substantial part of the events giving rise to the claims arose in San Mateo County, and this action should be assigned to the Oakland or San Francisco Division.

## PARTIES

125.    Plaintiff is a citizen of California, residing in San Mateo County.

126.    During the relevant statutes of limitations for each cause of action, between January 30, 2022, and February 6, 2022, among other times, Plaintiff purchased the Product for personal and household consumption and use, in reliance on the representations.

127.    Plaintiff purchased the Product at Country Time Market, 2200 University Ave, East Palo Alto CA 94303.

128.    Plaintiff bought the Product because she expected it would contain "100% Natural Flavors" to provide its taste and not contain artificial flavoring and would contain more of the referenced fruit ingredients than it did.

129.    Plaintiff bought the Product because she expected it would contain more of the referenced fruit ingredients than it did.

130.    Plaintiff viewed and relied upon Defendant's representations and omissions.

**CLASS ACTION COMPLAINT**

131.    Plaintiff did not expect the Product's taste would be provided by any ingredients that were not natural.

132.    Plaintiff tries to consume natural foods that are flavored only by natural flavorings and tries to avoid synthetic and artificial ingredients and flavorings as much as possible.

133.    Defendant The Coca-Cola Company is a Delaware corporation with a principal place of business in Atlanta, Fulton County, Georgia.

134.    Fanta is one of Defendant's oldest brands.

135.    Fanta was first made in Europe during the Second World War by Defendant's European divisions.

136.    Fanta is a unique brand because it was originally made with added local produce for flavoring, instead of sugary syrups and chemicals

137.    Fanta has always been known as a more "natural" and fruit-centric brand of soda than American soda brands, due to its European origins.

138.    Fanta sodas are based on real fruit flavors, and typically got their bright colors from fruit ingredients.

139.    Consumers place their trust in the Fanta brand, because they do not associate it with the big carbonated beverage companies and brands, like Coke, Pepsi, or Dr. Pepper

140.    Defendant capitalizes on this consumer trust when selling the Product.

141.    The Product is sold at thousands of locations, including grocery stores, drug stores, big box stores, gas stations, convenience stores, and online.

142.    The Product is sold in various sizes, including 12 oz cans, 16 oz bottles, and 2 liter bottles.

143.    Plaintiff would be willing to purchase the Product again if assured its taste was provided only by natural flavoring ingredients.

144.    Plaintiff would be willing to purchase the Product again if assured it contained a non-de minimis amount of blueberry and raspberry ingredients.

145.    Plaintiff is unable to rely not only on the representations of this Product, but other similar carbonated beverages represented as having only natural flavoring and containing non-

17

negligible amounts of fruit ingredients, even though he would like to, which causes her to refrain from, or be reluctant to, purchase such products.

## JURISDICTION AND VENUE

146.    This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(d) ("Class Action Fairness Act" or "CAFA").

147.    The proposed class has at least 100 members, because the Product is sold throughout this State at thousands of locations.

148.    Plaintiff is a citizen of California.

149.    Defendant is a citizen of Delaware and Georgia.

150.    Plaintiff is a citizen of a State different from Defendant.

151.    The amount-in-controversy of the claims of the proposed Class exceed $5,000,000, exclusive of interest and costs.

152.    Venue is in this District because a substantial part of the events or omissions giving rise to the claim occurred here – the purchases of Plaintiff and her awareness of the representations and omissions identified here.

153.    This Court has personal jurisdiction over Defendant because it conducts and transacts business, contracts to supply and supplies goods within California.

## CLASS ACTION ALLEGATIONS

154.    Plaintiff brings this proposed class action pursuant to Fed. R. Civ. P. Rule 23, on behalf of herself, and all others similarly situated, defined below:

> Class: All citizens of California who purchased the Product for personal or household consumption and/or use within the statutory period (the "Class").

155.    Excluded from the Class are: (a) Defendant, Defendant's board members, executive-level officers, and attorneys, and immediately family members of any of the foregoing persons; (b) governmental entities; (c) the Court, the Court's immediate family, and the Court staff; and (d) any person that timely and properly excludes himself or herself from the Class in accordance with Court-approved procedures.

156.    The Class consists of thousands of persons, and joinder is impracticable.

157.    Common questions of law or fact predominate and include whether Defendant's representations and omissions were and are misleading and if Plaintiff and class members are entitled to injunctive relief and damages.

158.    Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and omissions.

159.    Plaintiff is an adequate representatives because her interests do not conflict with other members.

160.    No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

161.    A class action is superior to other available methods for adjudication of this controversy, since individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

162.    Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

163.    Plaintiff anticipates that this Court can direct notice to the Class, by publication in major media outlets and the Internet.

**FIRST CLAIM**
**Violation of Cal. Bus. & Prof. Code §§ 17200 et seq.**
**– Unlawful Conduct Prong of the UCL**

164.    Plaintiff incorporates all preceding paragraphs.

165.    Defendant's conduct constitutes an unfair business act and practice pursuant to California Business & Professions Code §§ 17200, et seq. (the "UCL").

166.    The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising . . . ."

167.    Defendant's knowing conduct constitutes an "unfair" and/or "fraudulent" business practice, as set forth in California Business & Professions Code §§ 17200-17208.

168.    Defendant's conduct was and continues to be unfair and fraudulent because, directly

or through its agents and employees, Defendant made materially false representations and omissions.

169. Defendant's representations and omissions are "unlawful" because they violate the Federal Food, Drug, and Cosmetic Act ("FFDCA") and its implementing regulations, including:

    a.  21 U.S.C. § 343, which deems food misbranded when the label contains a statement that is "false or misleading in any particular," with "misleading" defined to "take[] into account (among other things) not only representations made or suggested by statement, word, design, device, or any combination thereof, but also the extent to which the labeling or advertising fails to reveal facts material";

    b.  21 U.S.C. § 321(n), which states the nature of a false and misleading advertisement;

    c.  21 C.F.R. § 101.18(b), which prohibits true statements about food ingredients and descriptions that are misleading in light of the presence of other ingredients;

    d.  21 C.F.R. § 101.22, which provides requirements to truthfully identify and disclose the source of a food or beverage's characterizing flavor; and

    e.  21 C.F.R. § 102.5, which prohibits misleading common or usual names.

170. Defendant's conduct is "unlawful" because it violates the California False Advertising Law ("FAL") and the Consumer Legal Remedies Act ("CLRA").

171. Defendant's conduct violates the California Sherman Food, Drug, and Cosmetic Law, Cal. Health & Saf. Code section 109875, et seq. ("Sherman Law"), including:

    a.  Section 110100 (adopting all FDA regulations as state regulations);

b. Section 110290 ("In determining whether the labeling or advertisement of a food … is misleading, all representations made or suggested by statement, word, design, device, sound, or any combination of these, shall be taken into account.  The extent that the labeling or advertising fails to reveal facts concerning the food … or consequences of customary use of the food … shall also be considered.");

c. Section 110390 ("It is unlawful for any person to disseminate any false advertisement of any food…. An advertisement is false if it is false or misleading in any particular.");

d. Section 110395 ("It is unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food … that is falsely advertised.");

e. Section 110398 ("It is unlawful for any person to advertise any food, drug, device, or cosmetic that is adulterated or misbranded.");

f. Section 110400 ("It is unlawful for any person to receive in commerce any food … that is falsely advertised or to deliver or proffer for delivery any such food…."); and

g. Section 110660 ("Any food is misbranded if its labeling is false or misleading in any particular.").

172.    Each of the challenged statements made and actions taken by Defendant violates the FFDCA, FAL, and Sherman Law, and therefore violates the "unlawful" prong of the UCL.

173.    Defendant leveraged its deception to induce Plaintiff and Class Members to purchase a product that was of lesser value and quality than advertised.

174.    Defendant's deceptive advertising caused Plaintiff and Class Members to suffer

**CLASS ACTION COMPLAINT**

injury-in-fact and to lose money or property.

175.    Defendant's actions denied Plaintiff and Class Members the benefit of the bargain when they decided to purchase the Product instead of other products that are less expensive and contain virtually the same or immaterially different relative amounts of natural flavors compared to artificial flavors.

176.    Had Plaintiff and Class Members been aware of Defendant's false and misleading advertising, they would not have purchased the Product, or would have paid less.

177.    In accordance with California Business & Professions Code section 17203, Plaintiff seeks an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and to commence a corrective advertising campaign.

178.    Plaintiff seeks an order for the disgorgement and restitution of all monies from the sale of the Product that was unjustly acquired through such acts.

**SECOND CLAIM**
**Violation of Cal. Bus. & Prof. Code §§ 17200 et seq.**
**– Unfair and Fraudulent Conduct Prong of the UCL**

179.    Plaintiff incorporates all preceding paragraphs.

180.    California Business & Professions Code section 17200 prohibits any "unlawful, unfair or fraudulent business act or practice."

181.    The false and misleading representations of the Product constitutes "unfair" business acts and practices because it is immoral, unscrupulous, and offends public policy.

182.    The gravity of the conduct outweighs any conceivable benefit.

183.    The representations and omissions constitute "fraudulent" business acts and practices because they are false and misleading to Plaintiff and Class Members.

184.    Defendant's representations and omissions are likely to deceive Plaintiff and Class Members about presence of non-natural flavors, such as DL-Malic Acid.

185.    Defendant knew or reasonably should have known that its statements and omissions concerning the Product were likely to deceive consumers.

186.    In accordance with California Business & Professions Code section 17203, Plaintiff seeks an order enjoining Defendant from continuing to conduct business through unlawful, unfair,

1 and/or fraudulent acts and practices and to commence a corrective advertising campaign.

2     187.    Plaintiff seeks an order for the disgorgement and restitution of all monies from the

3 sale of the Product that was unjustly acquired through acts of unlawful, unfair and/or fraudulent

4 competition.

5  

6 **<u>THIRD CLAIM</u>**
**Violation of Cal. Bus. & Prof. Code §§ 17500 et seq.**
**– False and Misleading Advertising**

7     188.    Plaintiff incorporates all preceding paragraphs.

8     189.    California False Advertising Law (Cal. Business & Professions Code sections 17500

9 and 17508) prohibits "mak[ing] any false or misleading advertising claim."

10     190.    Defendant makes "false [and] misleading advertising claim[s]," by deceiving

11 consumers as to flavoring and ingredients used in the Product, by, *inter alia*, promising "100%

12 Natural Flavors," which tells Plaintiff and Class Members the flavoring used will be only from

13 natural sources.

14     191.    In reliance on these false and misleading advertising claims, Plaintiff and Class

15 Members purchased and consumed the Product without the knowledge it did not contain "100%

16 Natural Flavors," because it contained artificial flavoring from DL-Malic Acid.

17     192.    Defendant knew or should have known that its representations and omissions were

18 likely to deceive consumers.

19     193.    As a result, Plaintiff and Class Members are entitled to injunctive and equitable relief,

20 restitution, and an seek an order for the disgorgement of the funds by which Defendant was unjustly

21 enriched.

22 **<u>FOURTH CLAIM</u>**
**Violations of the Consumer Legal Remedies Act,**
**Cal. Civ. Code §§ 1750 et seq.**

23  

24     194.    Plaintiff incorporates all preceding paragraphs.

25     195.    The CLRA adopts a statutory scheme prohibiting deceptive practices in connection

26 with the conduct of a business providing goods, property, or services primarily for personal, family,

27 or household purposes.

28     196.    Defendant's policies, acts, and practices were designed to, and did, result in the

purchase and use of the Product primarily for personal, family, or household purposes, and violated and continue to violate the following sections of the CLRA:

     a.  Section 1770(a)(2), which prohibits representing that goods have a particular composition or contents that they do not have;

     b.  Section 1770(a)(5), which prohibits representing that goods have characteristics, uses, benefits or ingredients that they do not have;

     c.  Section 1770(a)(7), which prohibits representing that goods are of a particular standard, quality, or grade if they are of another;

     d.  Section 1770(a)(9), which prohibits advertising goods with intent not to sell them as advertised; and

     e.  Section 1770(a)(16), which prohibits representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

197.   Plaintiff requests that this Court enjoin Defendant from continuing to employ the unlawful methods, acts and practices alleged herein pursuant to Cal. Civ. Code § 1780.

198.   If Defendant is not restrained from engaging in these types of practices in the future, Plaintiff and class members will continue to suffer harm.

199.   Pursuant to the provisions of Cal. Civ. Code § 1782(a), Plaintiff will send a CLRA Notice to Defendant concurrently with the filing of this action or shortly thereafter, which details the violations of the CLRA, demands correction of these violations, and provides the opportunity to correct these business practices.

200.   If Defendant does not correct its business practices, Plaintiff will amend or seek leave to amend the complaint to add claims for monetary relief, including restitution and actual damages under the CLRA.

**CLASS ACTION COMPLAINT**

201.    Plaintiff will seek injunctive relief, restitution and damages for Defendant's violation of the CLRA.

### FIFTH CLAIM
### Unjust Enrichment

202.    Plaintiff incorporates all preceding paragraphs.

203.    Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and Class Members, who seek restitution and disgorgement of inequitably obtained profits.

### JURY DEMAND AND PRAYER FOR RELIEF

Plaintiff demands a jury trial on all causes of action so triable.

WHEREFORE, Plaintiff, on behalf of himself and Members of the Proposed Class, prays for judgment and relief on all of the legal claims as follows:

A.    Certification of the Class, certifying Plaintiff as representative of the Class, and designating Plaintiff's counsel as counsel for the Class;

B.    A declaration that Defendant has committed the violations alleged herein;

C.    For restitution and disgorgement pursuant to, without limitation, the California Business & Professions Code §§ 17200, et seq. and Cal Civ. Code § 1780, except for monetary damages under the CLRA;

D.    For declaratory and injunctive relief pursuant to, without limitation, the California Business & Professions Code §§ 17200, et seq. and 17500, et seq.;

E.    For damages, declaratory and injunctive relief pursuant to California Civil Code § 1780, except for monetary damages under the CLRA;

F.    An award of compensatory damages, the amount of which is to be determined at trial, except for monetary damages under the CLRA;

G.    For punitive damages;

H.    For interest at the legal rate on the foregoing sums;

I.    For attorneys' fees;

J.    For costs of suit incurred; and

**CLASS ACTION COMPLAINT**

K.      For such further relief as this Court may deem just and proper.

Dated:    March 3, 2022

Respectfully submitted,

/s/    Jonathan Shub

Shub Law Firm LLC
Kevin Laukaitis*
134 Kings Hwy E Fl 2
Haddonfield, NJ 08033
T: (856) 772-7200
jshub@shublawyers.com
klaukaitis@shublawyers.com

Sheehan & Associates, P.C.
Spencer Sheehan*
60 Cuttermill Rd Ste 412
Great Neck, NY 11021
T: (516) 268-7080
spencer@spencersheehan.com

*Pro Hac Vice Motion Filed, Approved or Forthcoming*

**CLASS ACTION COMPLAINT**