**SHUB LAW FIRM LLC**
Jonathan Shub (CA Bar No. 237708)
Kevin Laukaitis*
134 Kings Hwy E Fl 2
Haddonfield, NJ 08033
T: (856) 772-7200
jshub@shublawyers.com
klaukaitis@shublawyers.com

*Attorneys for Plaintiff and the Proposed Class*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Kyla Tapia, individually and on behalf of all others similarly situated, | Case No. 4:22-cv-01362-HSG |
| Plaintiff, | |
| - against - | First Amended Class Action Complaint |
| The Coca-Cola Company, | |
| Defendant | Jury Trial Demanded |

Plaintiff Kyla Tapia ("Plaintiff"), by attorneys, alleges upon information and belief, except for allegations pertaining to Plaintiff, which are based on personal knowledge:

1.     The Coca-Cola Company ("Defendant") manufactures, distributes, markets, labels, and sells berry flavored carbonated beverages purporting to have "100% Natural Flavors" under the Fanta brand (the "Product").



1

**FIRST AMENDED**
**CLASS ACTION COMPLAINT**

**FACTUAL ALLEGATIONS**

**I.       CONSUMER DEMAND FOR NATURAL FLAVORS**

2.      Consumers are increasingly concerned about the ingredients added to what they eat and drink.

3.      Surveys have shown that consumers are less likely to buy beverages, even sodas, which have artificial ingredients.

4.      Within the spectrum of artificial ingredients, consumers are especially focused on, and seek to avoid, artificial flavors, and seek products with only natural flavors.

5.      The representation that the Product has "100% Natural Flavors" appeals to the more than seven out of ten consumers who avoid artificial flavors, as these synthetic ingredients are believed to be associated with detrimental health and environmental effects.

6.      Natural flavor is defined as "essential oil, oleoresin, essence or extractive, protein hydrolysate, distillate, or any product of roasting, heating or enzymolysis, which contains the flavoring constituents" from fruits or vegetables, "whose significant function in food is flavoring rather than nutritional." 21 C.F.R § 101.22(a)(3).

7.      Artificial flavor is defined as "any substance, the function of which is to impart flavor, which is not derived from a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, fish, poultry, eggs, dairy products, or fermentation products thereof." 21 C.F.R § 101.22(a)(1).

8.      According to the Wall Street Journal, "As consumer concern rises over artificial ingredients, more food companies are reconstructing recipes" to remove artificial flavors.[1]

9.      According to Paul Manning, chief executive officer and president of Sensient Technologies, "Consumer desire for naturally flavored products is an emerging trend."[2]

10.      Explanations for why consumers prefer foods containing natural, instead of artificial flavors, are varied.

11.      A recent survey reported that over 82% of US respondents believe that foods with

---

[1] Lauren Manning, How Big Food Is Using Natural Flavors to Win Consumer Favor, Wall Street Journal.
[2] Keith Nunes, Using natural ingredients to create authentic, fresh flavors, Food Business News, Sept. 20, 2018.

**FIRST AMENDED
CLASS ACTION COMPLAINT**

artificial flavors are less healthy than those promoted as containing natural flavors and/or not containing artificial flavors.

12.     Consumers seek to avoid artificial flavors because they are weary of ingredients which are highly processed with chemical additives and synthetic solvents in laboratories.

13.     According to Nielsen, the absence of artificial flavors is very important for over 40% of respondents to their Global Health & Wellness Survey.

14.     One scholar theorized "the preference for natural products appeals to a moral ideology and offers a moral satisfaction."[3]

15.     The trade journal, Perfumer & Flavorist, described "The Future of Artificial Flavors & Ingredients" as bleak, given consumer opposition to these synthetic ingredients.[4]

16.     Mintel announced that consumer avoidance of artificial flavors is just as strong as their desire for natural flavors, in its Report, "Artificial: Public Enemy No. 1."[5]

17.     About half of Americans say they seek out natural flavors at least some of the time.

18.     In contrast, artificial flavors were sought out by only about one in 10 consumers, with approximately half saying they avoid each of them at least some of the time.

19.     Nielsen reported that 62% of consumers try to avoid artificial flavors.

20.     New Hope Network concluded that 71% of consumers avoid artificial flavors.

21.     Label Insight determined that 76% of consumers avoid artificial flavors.

22.     A recent survey shows more than three in four people worldwide are convinced that artificial flavors have no place on their ingredient lists.[6]

23.     According to Forbes, 88% of consumers consider foods without artificial flavors to be more natural and healthier than foods with artificial flavors and would pay more for such foods.

---

[3] Rozin, P., Spranca, M., Krieger, Z., Neuhaus, R., Surillo, D., Swerdlin, A., & Wood, K. (2004). Preference for natural: Instrumental and ideational/moral motivations, and the contrast between foods and medicines. Appetite, 43(2), 147–154. doi:10.1016/j.appet.2004.03.005.

[4] Jim Kavanaugh, The Future of Artificial Flavors & Ingredients, Perfumer & Flavorist, June 12, 2017.

[5] Alex Smolokoff, Natural color and flavor trends in food and beverage, Natural Products Insider, Oct. 11, 2019; Thea Bourianne, Exploring today's top ingredient trends and how they fit into our health-conscious world, March 26-28, 2018; Nancy Gagliardi, Consumers Want Healthy Foods – And Will Pay More For Them, Forbes, Feb 18, 2015.

[6] What 'Natural' Really Means to Consumers GNT Group's Guide to Global Consumer Demands attests importance of natural colors for future-proof products, July 13, 2017.

3

**FIRST AMENDED**
**CLASS ACTION COMPLAINT**

1

**II.      FLAVORING REPRESENTED AS ONLY COMING FROM NATURAL FLAVORS**

2       24.    Defendant markets the Product with the prominent statement, "100% Natural

3   Flavors" above the word "Berry,"

4       25.    The front label contains a picture of five blueberries, a raspberry with its stem and

5   leaves and two red droplets purporting to be from raspberry.

6

7

8

9

10

11

12        

13

14

15

16

17

18

19

20

21

22

23       26.    These representations reinforce to consumers that the Product will get its taste from

24   only natural flavoring ingredients.

25       27.    Though the ingredients include "Natural Flavors," they also include "Malic Acid."

26

27

28

**FIRST AMENDED**
**CLASS ACTION COMPLAINT**



CARBONATED WATER, HIGH FRUCTOSE CORN SYRUP, NATURAL FLAVORS, CITRIC ACID, SODIUM CITRATE, MALIC ACID, POTASSIUM SORBATE AND SODIUM BENZOATE (TO PROTECT TASTE), BLUE 1.

28.     The Product contains almost as much malic acid than natural flavors, as the former is the third listed ingredient while the latter is sixth, reflecting their order of predominance.

29.     Federal and identical state regulations require ingredients to be designated by their specific name instead of their generic name. 21 C.F.R. § 101.4(b).

30.     The label only lists "Malic Acid," the generic name for this ingredient, even though its specific name is "DL-Malic Acid."

31.     The ingredient list does not disclose that this malic acid is an artificial flavoring ingredient which provides flavoring to the Product.

### III.     MALIC ACID

32.     A flavor is a substance the function of which is to impart taste. *See* 21 C.F.R. § 101.22(a)(1) and (3).

33.     Taste is the combination of sensations arising from specialized receptor cells located in the mouth.[7]

34.     Taste can be defined as sensations of sweet, sour, salty, bitter, and umami.

35.     However, limiting taste to five categories suggests that taste is simple, which is not true.

36.     For example, the taste of sour includes the sourness of vinegar (acetic acid), sour

---

[7] Gary Reineccius, Flavor Chemistry and Technology § 1.2 (2d ed. 2005).

**FIRST AMENDED**
**CLASS ACTION COMPLAINT**

milk (lactic acid), lemons (citric acid), apples (malic acid), and wines (tartaric acid).

37.   Each of those acids is responsible for unique sensory characteristics of sourness.

38.   Fruit flavors are the sum of the interaction between sugars, acids, and volatile compounds.[8]

39.   Sweetness and tartness are important contributors to the states and flavor perception of blueberries and raspberries.[9]

40.   The quality and overall consumer acceptability of blueberries and raspberries is based on their perceived sweetness and tartness, as well as their flavor perception, balance, and overall consumer acceptability, which is determined by their sugar to acid ratio.

41.   Consumer acceptability of the flavor of blueberries and raspberries are based on their perceived sweetness and tartness, determined by their sugar to acid ratio.

42.   Sugars, mainly glucose and fructose, and their ratio to acids, such as citric and malic acid, determine the sweetness of fruits.

43.   The table below shows the acid composition of numerous fruits.

| Table I.  Acids Naturally Present in Fruits | | |
|---|---|---|
| Fruit | Predominant Acid | Secondary Acids |
| Apple | Malic Acid (95%*) | Tartaric Acid, Fumaric Acid |
| Apricot | Malic Acid (70%*) | Citric Acid, Tartaric Acid |
| Blueberry | Citric Acid | Malic Acid, Quinic Acid |
| Cherry | Malic Acid (94%*) | Tartaric Acid |
| Grape | Malic Acid (60%*) | Tartaric Acid |
| Grapefruit | Citric Acid | Malic Acid |
| Guava | Citric Acid | Malic Acid |
| Lime, Lemon | Citric Acid | Malic Acid |
| Mango | Citric Acid | Malic Acid, Tartaric Acid |
| Orange | Citric Acid | Malic Acid |
| Peach | Malic Acid (73%*) | Citric Acid |
| Pear | Malic Acid (77%*) | Citric Acid |
| Pineapple | Citric Acid | Malic Acid |
| Raspberry | Citric Acid | Malic Acid, Tartaric Acid |
| Strawberry | Citric Acid | Malic Acid, Tartaric Acid |
| Tamarind | Tartaric Acid | Citric Acid, Malic Acid |
| Watermelon | Malic Acid (99%*) | Fumaric Acid |
| *% of the total acid in the fruit | | |

[8] Y.H. Hui, et al., Handbook of Fruit and Vegetable Flavors, p. 693 (2010).
[9] Y.H. Hui, et al., Handbook of Fruit and Vegetable Flavors, p. 693 (2010).

**FIRST AMENDED**
**CLASS ACTION COMPLAINT**

44.     Though citric acid is the predominant acid in blueberries and raspberries, malic acid is most responsible for the unique tart taste of these berries.

45.     Malic acid is estimated to comprise one-third of the total acids in blueberries and raspberries.

46.     Malic acid contributes and enhances the fruity, sweet and sour taste of these fruits.

## IV.   CHEMICAL STRUCTURE OF MALIC ACID

47.     Malic acid (molecular formula C4H6O5) is the common name for 1-hydroxy-1, 2-ethanedicarboxylic acid.

48.     Malic acid has two isomers, or different arrangements of atoms in the molecule, L-malic acid, and D-malic acid. 21 C.F.R. § 184.1069.

49.     An isomer is a molecule sharing the same atomic make-up as another but differing in structural arrangements.[10]

50.     Stereoisomers contain different types of isomers, each with distinct characteristics that separate each other as different chemical entities with different chemical properties.

51.     Stereoisomers differ from each other by spatial arrangement, meaning different atomic particles and molecules are situated differently in any three-dimensional direction by even one degree.

52.     An enantiomers is a type of stereoisomer that is a mirror-image and cannot be superimposed.

53.     Enantiomers are like right and left-hand versions of the same molecular formula.

54.     D-Malic Acid and L-Malic Acid are enantiomers, with their skeletal formulas shown below.

---

[10] Dan Chong and Jonathan Mooney, Chirality and Stereoisomers (2019).

**FIRST AMENDED
CLASS ACTION COMPLAINT**



L-Malic acid

D-Malic acid

55.     L-Malic Acid occurs naturally in various fruits, such as those pictured on the Product's front label, and is known for providing sweetness and tartness, among other flavors.

56.     D-Malic Acid does not occur naturally.

57.     D-Malic Acid is most commonly found as a racemic mixture of the D isomer and L isomer, DL-Malic Acid, which is commercially made from petroleum products.

## V.     ADDITION OF DL-MALIC ACID

58.     Adding DL-Malic Acid to a solution of natural flavorings containing L-Malic Acid changes the concentration of malic acid in the solution and the ratio of total malic acid to sugars in that solution.

59.     Natural sugars – like glucose, fructose, and sucrose – combined with artificial DL-Malic Acid in a ratio engineered to resemble the natural chemical combination of sugar and L- Malic Acid found in the characterizing berry fruit flavors of the Product is not equivalent to the natural flavor of those characterizing fruits and flavors.

60.     A natural chemical combination of sugar and L-Malic Acid, altered by adding artificial DL-Malic Acid, is no longer equivalent to the original chemical combination of sugar and L-Malic Acid, and therefore no longer the natural flavor of those fruits.

61.     Defendant includes DL-Malic Acid to help make the Product taste tart and fruity, like the pictured fruits taste naturally.

62.     Defendant adds artificial DL-malic acid to the Product to create, enhance, simulate, and/or reinforce the sweet, fruity, and tart taste that consumers associate with the pictured fruits.

63.     Defendant had the option to add naturally extracted L-Malic Acid, a naturally manufactured acid such as citric acid, or natural fruit flavors, including from the fruits pictured, but used artificial DL-Malic Acid because it was likely cheaper or more accurately resembled the flavors of the pictured fruits than citric acid or other acids.

64.     DL-Malic Acid is synthetically produced from petroleum in a high-pressure, high-temperature, catalytic process.

65.     Since there are natural and artificial types of malic acid, laboratory analysis is required to identify which type was used in the Product.

66.     Laboratory analysis concluded the malic acid in Product is artificial, DL-Malic Acid, instead of natural, L-Malic Acid.

## VI.     REQUIREMENTS FOR LABELING

67.     Federal food labeling regulations established by the Federal Food, Drug, and Cosmetic Act ("FFDCA") are incorporated into state requirements by the Sherman Food, Drug, and Cosmetic Law, Cal. Health & Saf. Code § 109875, *et seq.* ("Sherman Law").

68.     These regulations prohibit false and deceptive identification of the source of a food or beverage's characterizing flavors.

69.     The Product's primary or "characterizing" flavor is "Berry," which is understood by consumers to mean blueberries and raspberries, because the label makes "direct or indirect representations" about these berries, through words, "Berry," and the pictures of blueberries and raspberries. 21 C.F.R. § 101.22(i).

70.     The Product is required to disclose whether its characterizing berry flavors are from blueberries and raspberries, natural sources other than these fruits, and/or from artificial, chemical sources, such as DL-Malic Acid, from petroleum. 21 C.F.R. § 101.22(i).

71.     The lower left corner of the Product states, "Berry Flavored Soda With Other Natural Flavors."

**FIRST AMENDED**
**CLASS ACTION COMPLAINT**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28




72.     This language is required by federal and state regulations where a food or beverage purports to contain some flavor from the characterizing ingredients, i.e., blueberries and raspberries, and other flavor from natural sources other than the characterizing ingredients. 21 C.F.R. § 101.22(i)(1)(iii).

73.     The Product's labeling, which includes, "Berry," "Berry Flavored Soda With Other Natural Flavors," and "100% Natural Flavors," with pictures of blueberries, raspberries, and red juice droplets, is misleading because it fails to disclose the addition of artificial flavor in the form of DL-Malic Acid and tells consumers it is flavored only with natural flavoring ingredients.

74.     Since the Product contains artificial flavor, DL-Malic Acid, that simulates, resembles and reinforces the characterizing berry flavors of blueberries and raspberries, the name of the

characterizing berry flavor is required to "be accompanied by the word(s) 'artificial' or 'artificially flavored,'" such as "Artificial Berry Flavored Soda" or "Artificially Flavored Berry Soda" instead of "Berry Flavored Soda With Other Natural Flavors." 21 C.F.R. § 101.22(i)(2).

75. DL-Malic Acid is not a "natural flavor" as this term is defined by federal and state regulations, because it is not derived from a fruit or vegetable or any natural source.

76. A combination of sugar and DL-Malic Acid in a ratio resembling blueberry and raspberry flavors cannot be derived from a fruit or vegetable or other natural sources.

77. A combination of sugar, natural L-Malic Acid, and artificial DL-Malic Acid combined in a way to resemble the natural ratio of sugar and L-Malic Acid found in the characterizing blueberry and raspberry flavors of the Product cannot be derived from a fruit or vegetable or other natural source.

78. A combination of sugars and artificial DL-Malic Acid engineered to resemble the natural ratio of sugars and natural L-Malic Acid that make up the natural flavor of the characterizing fruits of the Product is not a natural flavor.

79. The natural flavors of the pictured fruits is heavily dependent on specific ratios of sugar and L-Malic Acid, while the Product's flavors depend upon a ratio of sugar and DL-Malic Acid.

80. DL-Malic Acid could function as a flavor enhancer or PH balancer.

81. A flavor enhancer is "added to supplement, enhance, or modify the original taste and or aroma of a food without imparting a characteristic taste or aroma of its own." 21 C.F.R. § 170.3(o)(11).

82. For example, malic acid added to vinegar (ascetic acid) dishes like barbecue pork, coleslaw, or pickled eggs would most likely not fundamentally alter the underlying vinegar flavors.

83. However, because the flavor imparted by malic acid is a core component of the pictured fruits, DL-Malic Acid does not function as a flavor enhancer.

84. Under these circumstances, artificial DL-Malic Acid fundamentally alters the original combination of sugar and natural L-Malic Acid core to the pictured blueberries and raspberry, so that the flavors of the Product are no longer a natural ratio of sugar and L-Malic Acid

but instead an artificial ratio of sugar and DL-Malic Acid.

85.     PH balancers are "substances added to change or maintain active acidity or basicity, including buffers, acids, alkalis, and neutralizing agents." 21 C.F.R. § 170.3(o)(23).

86.     The malic acid used is not a PH balancer because it is not necessary to change or maintain active acidity or basicity in the Product.

87.     Irrespective of the purpose Defendant may claim DL-Malic Acid was added to the Product, it has the same effect on its characterizing flavors.

88.     Defendant does not have the ability to command DL-Malic Acid to only perform certain functions and is not allowed to decide which malic acid constitutes flavor and which malic acid constitutes only a flavor enhancer or PH balancer.

89.     Plaintiff and consumers are unable to learn the malic acid listed in the ingredients is the artificial version without a chemistry kit and detailed knowledge of the relevant regulations.

90.     The Product's fruit flavor from DL-Malic Acid resembles the natural characterizing flavors represented to be used.

91.     Plaintiff purchased the Product because the packaging claimed it contained "100% Natural Flavors" and that only natural flavors were responsible for the berry taste.

92.     Defendant employs chemists to create the chemical flavor formula of the Product.

93.     Defendant knew or should have known that DL-Malic Acid is not naturally occurring, and that by adding DL-Malic Acid, the natural flavorings would be fundamentally changed.

94.     Defendant knew that DL-Malic Acid would contribute to the Product's tart and fruity taste, and that it was used to enhance the taste of the fruits pictured on the Product.

## VII.    PRODUCT LACKS APPRECIABLE AMOUNT OF BLUEBERRY AND RASPBERRY INGREDIENTS

95.     The Product has a blue appearance, similar to the color of a combination of blueberries and raspberries.

96.     When seen together with the promise of "100% Natural Flavors" and pictures of the berries, it creates the impression the Product contains some blueberry and raspberry ingredients.

97.     Despite the representation as "Berry," pictures of blueberries and raspberries, and blue color, the ingredients reveals it contains no blueberry and raspberry ingredients.



CARBONATED WATER, HIGH FRUCTOSE CORN SYRUP, NATURAL FLAVORS, CITRIC ACID, SODIUM CITRATE, MALIC ACID, POTASSIUM SORBATE AND SODIUM BENZOATE (TO PROTECT TASTE), BLUE 1.

98.     The ingredients only list "NATURAL FLAVORS," which is a partial source of the berry taste.

99.     According to flavor expert Bob Holmes, if the Product provided "all the flavor depth" of natural blueberries and raspberries, the ingredients would include blueberry and raspberry juice or extract, instead of "Natural Flavors."

100.    "Natural Flavors" and "Malic Acid" fail to tell consumers that the Product's taste is not from blueberries and raspberries, but a mix of isolated compounds from fruits, vegetables, and petrochemical sources, which are combined in a laboratory, with additives and solvents, into highly concentrated formulas.

101.    The front label attempts a "disclaimer" in the lower left corner, through its statement of identity, "Berry Flavored Soda With Other Natural Flavors." 21 C.F.R. § 101.3.

102.    This is language required by federal and state regulations where a beverage contains some flavor from the characterizing ingredients, and other flavor from natural ingredients other than the characterizing ingredients, which enhances, simulates, and reinforces the characterizing flavors. 21 C.F.R. § 101.22(i)(1)(iii).

103.    The label is placed in a way which renders it unlikely to be seen by consumers,

because it is not "in bold type" nor "in a size reasonably related to the most prominent printed matter," such as the brand name, Fanta, "100% Natural Flavors," the pictures of blueberries and a raspberry, and the word, "BERRY." 21 C.F.R. § 101.3(d).




104.    Even if consumers noticed this small print disclosure after seeing the other representations, they would not know this meant the Product did not contain an appreciable amount of blueberry and raspberry flavorings and contained artificial flavor.

105.    That the Product contains no blueberry and raspberry ingredients is confirmed by the back label statement, "Contains No Juice," above the Nutrition Facts.

1

2

3

4

5

6

7

8

9

10

11

12



13    106.    To give consumers the false impression that the Product contains a greater absolute

14    and relative amount of natural blueberry and raspberry ingredients than it does, it contains the coal

15    tar dye, "BLUE 1," a synthetic coloring made from petroleum.

16    107.    According to the head of a prominent flavor and color manufacturer, "Color is the

17    first thing a consumer may consider when purchasing a food or beverage item."

18    108.    According to one website, artificial dyes are used to help hide the fact that foods do

19    not contain the types of ingredients they explicitly and implicitly promise elsewhere on their labels.

20    109.    Since the Product promotes blueberries, raspberries, and "100% Natural Flavors,"

21    consumers will expect the blue color is from blueberries.

22    110.    That the front label contains five blueberries to one raspberry reinforces this

23    expectation of a blue color, as opposed to a red color.

24    111.    Without the added coloring, consumers would be suspect of a product labeled as

25    "Berry," with pictures of berries, and promising "100% Natural Flavors," because the color would

26    not be deep blue.

27    112.    This could cause consumers to inspect the ingredient list to determine the truth.

28    113.    Even though the Product discloses artificial coloring in the ingredient list, its usage

15

causes consumers to expect the Product is of greater quality than it is.

114.   Though Blue 1 is approved for use in food, is has been banned in Australia and Europe due to health concerns and is linked to learning disorders and hyperactivity in children.

115.   Given that the Product is sold under the Fanta brand, Plaintiff had no reason to expect the Product lacked the relative amount and type of berry ingredients.

## VIII.   RELIANCE AND ECONOMIC INJURY

116.   Plaintiff saw and relied on the representations, which misleadingly state, "100% Natural Flavors," "BERRY," and "Berry Flavored Soda With Other Natural Flavors," with pictures of blueberries and a raspberry, in a clear bottle of blue-colored liquid.

117.   Plaintiff sought to purchase a product which got its taste only from natural flavoring ingredients, and without artificial flavoring.

118.   Plaintiff sought to purchase a product which contained some amount of the characterizing ingredients of blueberries and raspberries.

119.   Plaintiff would not have purchased the Product if she knew the representations were false and misleading.

120.   The Product costs more than similar products without misleading representations and but for the misleading representations, would have cost less.

121.   Plaintiff paid more for the Product than she otherwise would have, and would only have been willing to pay less, or unwilling to purchase it at all, absent the misleading representations.

122.   As a result of the false and misleading labeling, the Product is sold at a premium price, approximately no less than $2.29 per 16 OZ, excluding tax or sales, compared to other similar products represented in a non-misleading way, and higher than the price of the Product if it were represented in a non-misleading way.

## **PARTIES**

123.   Plaintiff is a citizen of California, residing in San Mateo County.

124.   During the relevant statutes of limitations for each cause of action, between January 30, 2022, and February 6, 2022, among other times, Plaintiff purchased the Product for personal and

16

household consumption and use, in reliance on the representations about its flavoring and ingredients.

125.    Plaintiff purchased the Product at Country Time Market, 2200 University Ave, East Palo Alto CA 94303.

126.    Plaintiff bought the Product because she expected it would contain "100% Natural Flavors" to provide its taste and not contain artificial flavoring and would contain more of the referenced fruit ingredients than it did.

127.    Plaintiff bought the Product because she expected it would contain more of the referenced fruit ingredients than it did.

128.    Plaintiff viewed and relied upon Defendant's representations and omissions.

129.    Plaintiff did not expect the Product's taste would be provided by any ingredients that were not natural.

130.    Plaintiff tries to consume natural foods that are flavored only by natural flavorings and tries to avoid synthetic and artificial ingredients and flavorings as much as possible.

131.    Plaintiff seeks foods which contain the ingredients it represents it has.

132.    Defendant The Coca-Cola Company is a Delaware corporation with a principal place of business in Atlanta, Fulton County, Georgia.

133.    Fanta is one of Defendant's oldest brands.

134.    Fanta was first made in Europe during the Second World War by Defendant's European divisions.

135.    Fanta is a unique brand because it was originally made with added local produce for flavoring, instead of sugary syrups and chemicals

136.    Fanta has always been known as a more "natural" and fruit-centric brand of soda than American soda brands, due to its European origins.

137.    Fanta sodas are based on real fruit flavors, and typically got their bright colors from fruit ingredients.

138.    Consumers place their trust in the Fanta brand, because they do not associate it with the big carbonated beverage companies and brands, like Coke, Pepsi, or Dr. Pepper

17

**FIRST AMENDED**
**CLASS ACTION COMPLAINT**

139.   Defendant capitalizes on this consumer trust when selling the Product.

140.   The Product is sold at thousands of locations, including grocery stores, drug stores, big box stores, gas stations, convenience stores, and online.

141.   The Product is sold in various sizes, including 12 oz cans, 16 oz bottles, and 2 liter bottles.

142.   Plaintiff would be willing to purchase the Product again if assured its taste was provided only by natural flavoring ingredients.

143.   Plaintiff would be willing to purchase the Product again if assured it contained a non-de minimis amount of blueberry and raspberry ingredients.

144.   Plaintiff is unable to rely not only on the representations of this Product, but other similar carbonated beverages represented as having only natural flavoring and containing non-negligible amounts of fruit ingredients, even though he would like to, which causes her to refrain from, or be reluctant to, purchase such products.

## JURISDICTION AND VENUE

145.   This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(d) ("Class Action Fairness Act" or "CAFA").

146.   The proposed class has at least 100 members, because the Product is sold throughout this State at thousands of locations.

147.   Plaintiff is a citizen of California.

148.   Defendant is a citizen of Delaware and Georgia.

149.   Plaintiff is a citizen of a State different from Defendant.

150.   The amount-in-controversy of the claims of the proposed Class exceed $5,000,000, exclusive of interest and costs.

151.   Venue is in this District because a substantial part of the events or omissions giving rise to the claim occurred here – the purchases of Plaintiff and her awareness of the representations and omissions identified here.

152.   This Court has personal jurisdiction over Defendant because it conducts and transacts business, contracts to supply and supplies goods within California.

## **CLASS ACTION ALLEGATIONS**

153.    Plaintiff brings this proposed class action pursuant to Fed. R. Civ. P. Rule 23, on behalf of herself, and all others similarly situated, defined below:

> Class: All citizens of California who purchased the Product for personal or household consumption and/or use within the statutory period (the "Class").

154.    Excluded from the Class are: (a) Defendant, Defendant's board members, executive-level officers, and attorneys, and immediately family members of any of the foregoing persons; (b) governmental entities; (c) the Court, the Court's immediate family, and the Court staff; and (d) any person that timely and properly excludes himself or herself from the Class in accordance with Court-approved procedures.

155.    The Class consists of thousands of persons, and joinder is impracticable.

156.    Common questions of law or fact predominate and include whether Defendant's representations and omissions were and are misleading and if Plaintiff and class members are entitled to injunctive relief and damages.

157.    Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and omissions.

158.    Plaintiff is an adequate representatives because her interests do not conflict with other members.

159.    No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

160.    A class action is superior to other available methods for adjudication of this controversy, since individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

161.    Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

162.    Plaintiff anticipates that this Court can direct notice to the Class, by publication in major media outlets and the Internet.

**FIRST AMENDED
CLASS ACTION COMPLAINT**

**FIRST CLAIM**
**Violation of Cal. Bus. & Prof. Code §§ 17200 et seq.**
**– Unlawful Conduct Prong of the UCL**

163.    Plaintiff incorporates all preceding paragraphs.

164.    Defendant's conduct constitutes an unfair business act and practice pursuant to California Business & Professions Code §§ 17200, et seq. (the "UCL").

165.    The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising . . . ."

166.    Defendant's knowing conduct constitutes an "unfair" and/or "fraudulent" business practice, as set forth in California Business & Professions Code §§ 17200-17208.

167.    Defendant's conduct was and continues to be unfair and fraudulent because, directly or through its agents and employees, Defendant made materially false representations and omissions.

168.    Defendant's representations and omissions are "unlawful" because they violate the Federal Food, Drug, and Cosmetic Act ("FFDCA") and its implementing regulations, including:

      a.   21 U.S.C. § 343, which deems food misbranded when the label contains a statement that is "false or misleading in any particular," with "misleading" defined to "take[] into account (among other things) not only representations made or suggested by statement, word, design, device, or any combination thereof, but also the extent to which the labeling or advertising fails to reveal facts material";

      b.   21 U.S.C. § 321(n), which states the nature of a false and misleading advertisement;

      c.   21 C.F.R. § 101.18(b), which prohibits true statements about food ingredients and descriptions that are misleading in light of the presence

**FIRST AMENDED**
**CLASS ACTION COMPLAINT**

of other ingredients;

d.  21 C.F.R. § 101.22, which provides requirements to truthfully identify and disclose the source of a food or beverage's characterizing flavor; and

e.  21 C.F.R. § 102.5, which prohibits misleading common or usual names.

169.  Defendant's conduct is "unlawful" because it violates the California False Advertising Law ("FAL") and the Consumer Legal Remedies Act ("CLRA").

170.  Defendant's conduct violates the California Sherman Food, Drug, and Cosmetic Law, Cal. Health & Saf. Code section 109875, et seq. ("Sherman Law"), including:

a.  Section 110100 (adopting all FDA regulations as state regulations);

b.  Section 110290 ("In determining whether the labeling or advertisement of a food … is misleading, all representations made or suggested by statement, word, design, device, sound, or any combination of these, shall be taken into account.  The extent that the labeling or advertising fails to reveal facts concerning the food … or consequences of customary use of the food … shall also be considered.");

c.  Section 110390 ("It is unlawful for any person to disseminate any false advertisement of any food…. An advertisement is false if it is false or misleading in any particular.");

d.  Section 110395 ("It is unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food … that is falsely advertised.");

e.  Section 110398 ("It is unlawful for any person to advertise any food, drug, device, or cosmetic that is adulterated or misbranded.");

21

**FIRST AMENDED**
**CLASS ACTION COMPLAINT**

f.  Section 110400 ("It is unlawful for any person to receive in commerce
any food … that is falsely advertised or to deliver or proffer for delivery
any such food…."); and

g.  Section 110660 ("Any food is misbranded if its labeling is false or
misleading in any particular.").

171.   Each of the challenged statements made and actions taken by Defendant violates the
FFDCA, FAL, and Sherman Law, and therefore violates the "unlawful" prong of the UCL.

172.   Defendant leveraged its deception to induce Plaintiff and Class Members to purchase
a product that was of lesser value and quality than advertised.

173.   Defendant's deceptive advertising caused Plaintiff and Class Members to suffer
injury-in-fact and to lose money or property.

174.   Defendant's actions denied Plaintiff and Class Members the benefit of the bargain
when they decided to purchase the Product instead of other products that are less expensive and
contain virtually the same or immaterially different relative amounts of natural flavors compared to
artificial flavors.

175.   Had Plaintiff and Class Members been aware of Defendant's false and misleading
advertising, they would not have purchased the Product, or would have paid less.

176.   In accordance with California Business & Professions Code section 17203, Plaintiff
seeks an order enjoining Defendant from continuing to conduct business through unlawful, unfair,
and/or fraudulent acts and practices and to commence a corrective advertising campaign.

177.   Plaintiff seeks an order for the disgorgement and restitution of all monies from the
sale of the Product that was unjustly acquired through such acts.

## SECOND CLAIM
**Violation of Cal. Bus. & Prof. Code §§ 17200 et seq.**
**– Unfair and Fraudulent Conduct Prong of the UCL**

178.   Plaintiff incorporates all preceding paragraphs.

179.   California Business & Professions Code section 17200 prohibits any "unlawful,

1    unfair or fraudulent business act or practice."

2        180.    The false and misleading representations of the Product constitutes "unfair" business

3    acts and practices because it is immoral, unscrupulous, and offends public policy.

4        181.    The gravity of the conduct outweighs any conceivable benefit.

5        182.    The representations and omissions constitute "fraudulent" business acts and practices

6    because they are false and misleading to Plaintiff and Class Members.

7        183.    Defendant's representations and omissions are likely to deceive Plaintiff and Class

8    Members about the presence of non-natural flavors, such as DL-Malic Acid.

9        184.    Defendant's representations and omissions are likely to deceive Plaintiff and Class

10   Members about the presence of blueberry and raspberry ingredients, based on the pictures of these

11   fruits and the Product's blue color.

12       185.    Defendant knew or reasonably should have known that its statements and omissions

13   concerning the Product were likely to deceive consumers.

14       186.    In accordance with California Business & Professions Code section 17203, Plaintiff

15   seeks an order enjoining Defendant from continuing to conduct business through unlawful, unfair,

16   and/or fraudulent acts and practices and to commence a corrective advertising campaign.

17       187.    Plaintiff seeks an order for the disgorgement and restitution of all monies from the

18   sale of the Product that was unjustly acquired through acts of unlawful, unfair and/or fraudulent

19   competition.

20                                 **THIRD CLAIM**
                    **Violation of Cal. Bus. & Prof. Code §§ 17500 et seq.**
21                      **– False and Misleading Advertising**

22       188.    Plaintiff incorporates all preceding paragraphs.

23       189.    California False Advertising Law (Cal. Business & Professions Code sections 17500

24   and 17508) prohibits "mak[ing] any false or misleading advertising claim."

25       190.    Defendant makes "false [and] misleading advertising claim[s]," by deceiving

26   consumers as to flavoring and ingredients used in the Product, by, *inter alia*, promising "100%

27   Natural Flavors," which tells Plaintiff and Class Members the flavoring used will be only from

28   natural sources and contain blueberry and raspberry ingredients.

191.    In reliance on these false and misleading advertising claims, Plaintiff and Class Members purchased and consumed the Product without the knowledge its flavoring was only from "100% Natural Flavors," because it contained artificial flavoring from DL-Malic Acid.

192.    Defendant knew or should have known that its representations and omissions were likely to deceive consumers.

193.    As a result, Plaintiff and Class Members are entitled to injunctive and equitable relief, restitution, and an seek an order for the disgorgement of the funds by which Defendant was unjustly enriched.

## FOURTH CLAIM
### Violations of the Consumer Legal Remedies Act,
### Cal. Civ. Code §§ 1750 et seq.

194.    Plaintiff incorporates all preceding paragraphs.

195.    The CLRA adopts a statutory scheme prohibiting deceptive practices in connection with the conduct of a business providing goods, property, or services primarily for personal, family, or household purposes.

196.    Defendant's policies, acts, and practices were designed to, and did, result in the purchase and use of the Product primarily for personal, family, or household purposes, and violated and continue to violate the following sections of the CLRA:

a.    Section 1770(a)(2), which prohibits representing that goods have a particular composition or contents that they do not have;

b.    Section 1770(a)(5), which prohibits representing that goods have characteristics, uses, benefits or ingredients that they do not have;

c.    Section 1770(a)(7), which prohibits representing that goods are of a particular standard, quality, or grade if they are of another;

d.    Section 1770(a)(9), which prohibits advertising goods with intent not to sell them as advertised; and

24

e.   Section 1770(a)(16), which prohibits representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

197.   Plaintiff requests that this Court enjoin Defendant from continuing to employ the unlawful methods, acts and practices alleged herein pursuant to Cal. Civ. Code § 1780.

198.   If Defendant is not restrained from engaging in these types of practices in the future, Plaintiff and class members will continue to suffer harm.

199.   Pursuant to Cal. Civ. Code § 1782(a), Plaintiff sent CLRA Notices, certified mail, return receipt requested, on March 7, 2022, to Defendant's registered agents in this State and its formation state, and its principal place of business in its home state.

200.   The CLRA Notices were received and signed for by Defendant or its agents, at its registered agents in this State on March 14, 2022, and in its formation state on March 11, 2022, and at its principal place of business in its home state on March 17, 2022.

201.   In addition to the three CLRA Notices sent by certified mail, return receipt requested, three CLRA Notices were sent by first-class mail to the same addresses.

202.   None of the CLRA Notices sent only by first-class mail were returned to sender.

203.   Plaintiff informed Defendant that she purchased the Product for personal and household use and consumption between January 30, 2022, and February 6, 2022, among other times, at stores including Country Time Market, 2200 University Ave, East Palo Alto CA 94303.

204.   The CLRA Notices detailed the violations of the CLRA.

205.   Plaintiff, on behalf of herself and all others similarly situated in California, and the general public, demanded that Defendant remedy the violations within 30 days of receipt of the CLRA Notices and take corrective action.

206.   Plaintiff informed Defendant that if it failed to take these corrective actions, she would bring a class action, in any appropriate court, or add claims under the CLRA to any existing class action, asserting claims for actual and punitive damages under the CLRA and any other applicable consumer laws and regulations to compel these steps, as well as seeking any other legally

appropriate restitution for damages, attorneys' fees, costs, incentive awards, and the costs of class notice and administration.

207.    Defendant failed to respond to the CLRA Notices within the permitted time.

208.    Plaintiff seeks injunctive relief, restitution, and monetary damages for Defendant's violations of the CLRA.

## FIFTH CLAIM
### Unjust Enrichment

209.    Plaintiff incorporates all preceding paragraphs.

210.    Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and Class Members, who seek restitution and disgorgement of inequitably obtained profits.

## JURY DEMAND AND PRAYER FOR RELIEF

Plaintiff demands a jury trial on all causes of action so triable.

WHEREFORE, Plaintiff, on behalf of herself and Members of the Proposed Class, prays for judgment and relief on all of the legal claims as follows:

A.    Certification of the Class, certifying Plaintiff as representative of the Class, and designating Plaintiff's counsel as counsel for the Class;

B.    A declaration that Defendant has committed the violations alleged herein;

C.    For restitution and disgorgement pursuant to, without limitation, the California Business & Professions Code §§ 17200, et seq. and Cal Civ. Code § 1780;

D.    For declaratory and injunctive relief, restitution, and monetary damages, pursuant to, without limitation, the California Business & Professions Code §§ 17200, et seq. and 17500, et seq. and the Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750 et seq.;

E.    For monetary damages, declaratory and injunctive relief pursuant to California Civil Code § 1780;

F.    An award of compensatory damages, the amount of which is to be determined at trial;

**FIRST AMENDED
CLASS ACTION COMPLAINT**

1    G.    For punitive damages;

2    H.    For interest at the legal rate on the foregoing sums;

3    I.    For attorneys' fees;

4    J.    For costs of suit incurred; and

5    K.    For such further relief as this Court may deem just and proper.

6

7    Dated:    May 26, 2022

Respectfully submitted,

8

/s/   Jonathan Shub

9

10   Shub Law Firm LLC
     Kevin Laukaitis*
11   134 Kings Hwy E Fl 2
     Haddonfield, NJ 08033
12   T: (856) 772-7200
     jshub@shublawyers.com
13   klaukaitis@shublawyers.com

14

     *Pro Hac Vice Motion Filed, Approved or
15   Forthcoming

16

17

18

19

20

21

22

23

24

25

26

27

28

27

**FIRST AMENDED**
**CLASS ACTION COMPLAINT**